# Thomas *v.* Harbison-Walker Refractories Company, Appellant.

*Lease—Rentals—Course of dealing—Notice.*

1. Where a lease of fire clay provides for a payment of ten cents per ton royalty on all clay taken from ten different tracts of land, all separately and particularly described in the lease, an assignee of the lessee cannot sustain a claim that he was liable for only seven and one-half cents per ton as to certain of the lands included in the lease, by proving a course of dealing between the original lessor and the former lessee as to the payment of such royalties, where there is no evidence whatever that the present owner, the successor in title to the former owner and original lessor, had any knowledge whatever of such a course of dealing.

2. An understanding or course of dealing when set up in face of a written agreement otherwise providing, must be established by full, clear and satisfactory evidence even as between the parties alleged to have assented to such a course of dealing. As against a subsequent grantee, or assignee, without knowledge, a course of dealing between prior owners cannot be set up at all to affect the rights of the parties under the written instrument.

3. Where a lease provides for a royalty of fifteen cents per ton and subsequently by an instrument in writing the royalty is reduced to seven and one-half cents per ton, and thereafter a new lease is executed covering the tracts mentioned in the old lease and including a number of new tracts all specifically described, at a royalty of ten cents per ton, and in the new lease there is no exception or reservation, and no mention of former leases or different royalties, and no ambiguity of language, the court will hold that the two prior leases were merged in the new lease.

*Interest—Tender—Royalties.*

4. Where a lessee tenders to the lessor a less amount of royalties than that claimed by the lessor and which so called tenders are by checks with vouchers, and the latter succeeds in establishing at law

his right to the full amount claimed, he is entitled to interest on the whole amount of the royalties due.

Argued Oct. 5, 1909. Appeal, No. 140, Oct. T., 1909, by defendant, from judgment of C. P. Cambria Co., Dec. T., 1907, No. 376, for plaintiff on case tried by the court without a jury in suit of James P. Thomas, Trustee, v. Harbison-Walker Refractories Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit to recover royalties under a lease. Before O'CONNOR, P. J.

The case was tried by the court without a jury under the act of April 22, 1874.

O'CONNOR, P. J., found the facts to be as follows:

The plaintiff in this case claims a right to recover the amount sought by him from the defendant under and by virtue of the terms of a lease granted by George T. Bliss, of the city of New York, to Harbison & Walker Company (defendant's predecessor in title), under date of October 31, 1899. By virtue of this lease the Harbison & Walker Company acquired the right for twenty-one years to mine fire clay on all of lessor's property in Cambria and Blair counties, at a royalty of ten cents per ton.

James P. Thomas as trustee has succeeded to all the rights of the original lessor, and Harbison-Walker Refractories Company, above named as defendant, has succeeded to all of the rights of the Harbison & Walker Company.

There is little by way of fact in dispute between the parties to this proceeding. The trial of the cause was submitted to the court without a jury under the provisions of the act of 1874.

The plaintiff stands alone upon the agreement dated October 31, 1899, and the defendant seeks relief from payment of a certain portion of plaintiff's claim by reason of a course of dealing between the original lessor and defendant's predecessor in title.

George T. Bliss on October 30, 1891, entered into a lease with Harbison & Walker, a partnership, giving to said partnership the right to mine fire clay on part of certain properties

of lessor situate in Cambria and Blair counties, Pennsylvania, for the period of twenty-one years, at the royalty of fifteen cents per ton. This agreement was immediately recorded in both counties.

On October 2, 1894, the partnership, Harbison & Walker, assigned this lease to Harbison & Walker Company, a corporation. On August 3, 1897, George T. Bliss and the Harbison & Walker Company entered into an agreement which modified that of 1891, by reducing the royalty from fifteen cents per ton to seven and a half cents per ton. No other money consideration was named. This land, together with some 3,500 additional acres, is embraced and included in the description contained in the lease of October 31, 1899, under and by virtue of the terms of which the plaintiff seeks to recover in this action.

Notwithstanding the terms of the lease of October 31, 1899, the Harbison & Walker Company continued to pay royalty upon fire clay mined from that portion of the land described in the lease of October 30, 1891, at the rate of seven and a half cents per ton, and upon the remainder of the land embraced and included in the lease of October 31, 1899, at the rate of ten cents per ton. Why this was done does not appear, and because of this course of dealing the defendant company asserts that plaintiff is estopped from recovering the remaining two and a half cents per ton royalty on fire clay mined from this particular tract of land.

We have affirmed each and every of plaintiff's requests for findings of fact, adopted them as findings of fact by the court, and therefore do not set out and number separate general findings of fact.

By deed dated May 31, 1901, Harbison & Walker Company assigned its right under the aforesaid leases to Harbison-Walker Company, who in turn transferred to defendant.

On November 5, 1902, the executors and trustees of George T. Bliss conveyed all the property formerly belonging to said Bliss to the plaintiff, who at or before that time had made a payment upon account of the purchase money. The deed, together with assignments of the aforesaid leases, was delivered

about November 11, 1902, and accepted by the plaintiff. Prior to this time the plaintiff had no knowledge of any course of dealing between his predecessor in title and the defendant company or its predecessor in title, except as provided for in the lease of October 31, 1899, which was recorded in Cambria county and which had been examined and passed upon by plaintiff at that time.

Defendant admits plaintiff's right to recover the amount of his claim if defendant's position that it is not required to pay royalty at the rate of more than seven and a half cents per ton for clay mined on the lands described in the lease of October 30, 1891, is not sustained; but submits that its contention must be sustained, for the reason it was in possession of said land and paying at the rate of seven and a half cents per ton royalty on the land mentioned and described in the lease of October 30, 1891, at and before plaintiff's claim attached to the lands in question, and that plaintiff was thereby put upon his inquiry concerning the rights of defendant under its possession, which inquiry would have informed the plaintiff of the course of dealing between his predecessors in title and the defendant company at the time plaintiff acquired title.

As a proposition of law, we believe and so decide that the agreement of October 30, 1891, and its modification of August 3, 1897, were merged in the agreement of October 31, 1899, and by the terms of this agreement the defendant company is bound, unless relieved by reason of the course of dealing between it and its predecessor, Harbison & Walker Company, with the original lessor, or his representatives.

There is no ambiguity in the above-stated lease dated October 31, 1899, and therefore the contention that the parties thereto had placed a certain construction on it by reason of their course of dealing is not tenable; nor are we convinced that this course of dealing could have been set up in defense of a claim for royalty under the agreement of October 31, 1899, except in so far as it related to royalties settled for at the rate recognized by the course of dealing.

There was nothing in the character of the possession manifested by the operations of the defendant company, and noth-

ing in the evidence which would indicate to the plaintiff that defendant was not operating under the lease dated October 31, 1899; and there is nothing in the testimony tending to show any course of dealing between the defendant company, its predecessor in title and the grantors of the plaintiff, which would bring home to the plaintiff knowledge of any course of dealing other than that outlined and provided for in the said agreement of 1899.   There is no evidence before the court which is calculated to even raise a suspicion in the mind of the plaintiff at the time he took title to this property and succeeded to all the rights of his grantor and assignor of the course of dealing relied upon by the defendant to relieve it from a portion of plaintiff's claim, and plaintiff has always refused to accept royalty at a less rate than that provided by the agreement of October 31, 1899.

The court entered judgment for plaintiff for $13,375.25, with interest.

*Error assigned* among others was the judgment of the court.

*Thomas H. Murray*, with him *J. E. MacCloskey, Jr., M. D. Kittell, Hazard Alex Murray* and *James P. O'Laughlin*, for appellant.—Having notice by the optional contract, by the deed, and the assignments delivered and accepted in pursuance of that contract, and by the fullest kind of possession, plaintiff was bound to inquire as to the rights of the lessees under these contracts: Epley v. Witherow, 7 Watts, 163; Jaques v. Weeks, 7 Watts, 261; Sergeant v. Ingersoll 7 Pa. 340; s. c., 15 Pa. 343; R. R. Co. v. Penna. Co., 222 Pa. 573, 585.

The conduct of the parties have interpreted their rights: Lummis & Co. v. Devine, 9 Pa. Superior Ct. 349; Smith v. Hickman, 14 Pa. Superior Ct. 46; Kane v. Ins. Co., 199 Pa. 205, 207; Kaul v. Weed, 203 Pa. 586, 592; McKeever v. Coal Co., 219 Pa. 234, 236.

*H. S. Endsley*, with him *J. C. Davies*, for appellee.

OPINION BY MR. JUSTICE ELKIN, January 3, 1910:

This is a controversy between the assignee of the lessor and

the assignee of the lessee involving the amount of royalty to be paid for fire clay mined and removed from certain tracts of land included in the indenture of lease.

In 1891 Bliss, the then owner of certain tracts of land involved in this suit, entered into an agreement of lease with a predecessor in title of appellant here granting the privilege of mining and removing the fire clay under the same for and in consideration of fifteen cents per gross ton to be paid the lessor. In 1897 the terms of the lease were modified by an instrument in writing so that the royalty was reduced from fifteen to seven and one-half cents per gross ton. In 1899, Bliss still being the owner of the land, executed a new lease to another predecessor in title of appellant, which lease included all of the tracts described in the original lease of 1891 as well as several other tracts not included in the former lease. This suit was brought to recover the amount of unpaid royalties upon the basis of ten cents per gross ton as stipulated in the lease of 1899. The appellee has succeeded to all the rights of the original lessor and the appellant has succeeded to all the rights of the original lessee. If the lease of 1899 covers all the lands described therein and supersedes the former leases the right of the appellee to recover on the basis of ten cents per ton cannot be doubted. The fire clay was mined from these properties, and there is no dispute as to the number of tons removed. The lease in terms provides that the lessee shall have "the right and privilege to explore, convey, mine, dig and carry away all the fire clay in and upon those certain tracts of land" described therein. Ten different tracts, aggregating several thousand acres with the names of the respective warrantees, dates of the original surveys and the number of acres contained in each tract, are separately described in the lease. It is further provided therein that "the said parties of the second part covenant, promise and agree for themselves, their heirs and assigns, to pay said party of the first part the price or royalty of ten (10) cents per ton of twenty-two hundred and forty pounds for each and every ton of fire clay mined and used, or shipped from said land." The right to mine the fire clay was to continue and be in force for a term

of twenty-one years from the date of the agreement unless canceled in the manner therein provided. Here, then, is an agreement between the parties covering all the lands from which fire clay was taken and removed by appellant which in the most positive terms provides that the lessor shall receive in payment for the clay so mined and removed the sum of ten cents per ton. This certainly makes out a strong prima facie case for appellee and places upon appellant a heavy burden to overcome the express provisions of the covenants thus formally entered into. The attempt is made to meet this burden by setting up a course of dealing between the prior owner and the former lessee under which only seven and one-half cents per ton was paid for the fire clay, taken from the lands included in the lease of 1891, and ten cents per ton for all the clay taken from the lands described in the lease of 1899 but not included in the former lease. In other words, the contention of appellant is that the two leases ran together and are in force, so that royalties should be paid according to their respective terms. By agreement of the parties the case was tried in the court below without a jury under the act of 1874. In such cases the findings of the court have the force and effect of the verdict of a jury. The learned court below in passing upon the course of dealing between the former parties to the contract of lease found that, "There was nothing in the character of the possession manifested by the operations of the defendant company, and nothing in the evidence which would indicate to the plaintiff that defendant was not operating under the lease dated October 31, 1899; and there is nothing in the testimony tending to show any course of dealing between the defendant company, its predecessor in title and the grantors of the plaintiff, which would bring home to the plaintiff knowledge of any course of dealing other than that outlined and provided for in the said agreement of 1899. There is no evidence before the court which is calculated to even raise a suspicion in the mind of the plaintiff at the time he took title to this property and succeeded to all the rights of his grantor and assignor of the course of dealing relied upon by the defendant to relieve it from a portion of the plaintiff's

claim, and plaintiff has always refused to accept royalty at a less rate than that provided by the agreement of October 31, 1899." Unless there is manifest error in these findings, the judgment must be affirmed. We have carefully examined the entire record here presented, but have not been convinced of any such manifest error as would justify a reversal. The twenty-seven assignments of error relate to the rulings of the court, the affirmance of certain points submitted, the admission of certain testimony, the manner of stating findings and the judgment entered. As we view the case, no useful purpose can be served by discussing the numerous questions raised by the assignments. If in point of fact the appellee had no knowledge or notice of a course of dealing between the prior lessor and lessee affecting the payment of royalties, he had the right to rely on the lease of 1899 and to insist upon payment according to its terms. Independently, however, of the question of fact as to the knowledge of appellee, the court was clearly right in holding that the lease of 1891 and its modification of 1897 were merged in the new lease of 1899. The language and covenants of this lease are not susceptible of any other reasonable interpretation. The new lease includes all of the lands covered by the former leases and adds several other tracts. The language is plain and unambiguous, and expresses the final understanding of the parties. There is no exception or reservation and no mention of former leases or different royalties. The presumption is that the parties meant what they said and intended to do what their written language imports, which was to pay for all the fire clay mined and removed at the rate of ten cents per ton. There is no ambiguity in the language used, and therefore nothing to explain by parol testimony. It may be conceded that notwithstanding the express covenants contained in the lease of 1899, the contracting parties might agree among themselves, or by a course of dealing amounting to a common understanding and agreement, that the royalties under the lease of 1897, should continue to be paid as therein provided and all other royalties to be paid as required by the lease of 1899. But such an understanding or course of dealing when set up in face of a written agreement

otherwise providing must be established by full, clear and satisfactory evidence even as between the parties alleged to have assented to such a course of dealing. As against a subsequent grantee, or assignee, without knowledge, a course of dealing between prior owners cannot be set up at all to affect the rights of the parties under the written instrument. In the case at bar the learned court below has found that appellee had no knowledge of such a course of dealing and that he relied on the terms of the written agreement and always insisted upon payment according to those terms. The evidence was sufficient to warrant the finding, and we see no reason to disturb it. Nor was there any error in allowing interest on the installments due from time to time under the terms of the lease and not paid as therein provided. The voucher checks were not unqualified tenders of the amounts due under the terms of the lease, and the appellee was not precluded thereby from claiming interest.

Assignments of error overruled and judgment affirmed.